IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PRINCE D. KEY,

                Plaintiff,

v.                                                  OPINION & ORDER

MEREDITH MASHAK, KARL HOFFMAN,            15-cv-673-jdp
and KEISHA PERRENOUD,

                Defendants.

---

In this action removed from the circuit court for Dane County, plaintiff Prince D. Key brings claims that defendant prison officials violated his Eighth Amendment right against cruel and unusual punishment by failing to treat his injured knee. The parties have filed dueling motions for summary judgment, and Key has filed a motion for recruitment of counsel.

After considering the parties' submissions, I will grant defendants' motion and deny Key's regarding his claims about defendants' treatment decision for the injury itself. But I will require the parties to provide supplemental briefing on Key's claim that there was a 50-day delay in being seen by a doctor to assess his need for more effective pain medication. I will deny Key's motion for recruitment of counsel without prejudice to reconsidering it following the supplemental briefing.

# FINDINGS OF FACT

The following facts are drawn from the parties' summary judgment submissions and are undisputed unless otherwise noted.

Plaintiff Prince D. Key is a prisoner currently housed at the Wisconsin Secure Program Facility. The events at issue in this case took place while Key was incarcerated at the Columbia Correctional Institution.

On November 29, 2014, Key injured his right knee during a basketball game. Key heard a loud popping sound in his knee and then felt pain, grinding, and swelling. Key submitted a Health Service Request (HSR) stating that he thought he broke a bone in his knee. A nurse responded, stating that he was scheduled to see a nurse.

On December 1, he was seen by Nurse Jarocki, who told Key to elevate his leg and brace it. Jarocki noted that Key had a limping gait and that he was guarding his right lower leg, but that it was bearing weight. Key's right patella joint was warm and swelling. Jarocki felt "a popping" on the anterior center of the knee above the joint with movement and pain. Jarocki diagnosed Key with an "alteration in comfort" and impaired physical mobility. Jarocki provided Key with an ace bandage, instructed him to use ice, rest, elevate his knee, abstain from recreation, and take ibuprofen as needed for pain. Key was instructed on use of muscle rub and given "special need" for ice bag and muscle rub. Key says that Jarocki told him to "brace" his leg, but another nurse denied him a brace, instead telling him that he could purchase one from the canteen.

On December 11, 2014, Key submitted an HSR stating that his knee was "moving/popping," he was in pain, and he was denied a knee brace. Nurse Campbell responded that braces were available through canteen.

On December 13, 2014, Key submitted an HSR requesting to see a doctor because his knee was locking up and causing him pain, and the ibuprofen was not working. Nurse Valerius responded that Key was scheduled for an appointment soon and that "scheduling takes time." Due to the limited number of appointments available with physicians, appointments are scheduled based on the need and severity of the injury.

Also on December 13, Key filed grievance No. CCI-2014-24408, stating that a nurse denied him the brace that Nurse Jarocki had recommended, and that his pain medication was not working. The institution complaint examiner contacted defendant Meredith Mashak, a registered nurse who at the time was the CCI health services manager, to assist with addressing the medical issues raised by the grievance. (I take the parties to be saying that the examiner was not a medical professional). Mashak reviewed Key's records and sent a memo to the examiner on December 17, stating that Nurse Jarocki followed the prison's "Musculoskeletal Pain Nursing Protocol" and provided him with proper treatment remedies, including ice, muscle rub, an ace wrap, and a recommendation for rest. She also stated that Jarocki told him that he should file a health service request if he was not seeing improvement. On January 6, 2015, the examiner recommended dismissing the grievance, but also stated that if Key continued to have problems with his knee, he should ask to be seen by HSU staff.

The examiner's recommendation was reviewed by defendant Keisha Perrenoud, a registered nurse who was employed as the DOC's Bureau of Health Services nursing coordinator. On January 9, Perrenoud accepted the recommendation to dismiss the grievance, stating that Key "was evaluated and treated appropriately per standard nursing protocol and reported symptoms."

On December 23, 2014, Key filed grievance No. CCI-2014-25227, stating that he had gone 25 days without seeing a doctor and his knee was "only getting worse." The institution complaint examiner contacted defendant Mashak and Assistant HSU Manager Nurse Koopmans. Koopmans—not Mashak—reviewed the medical record and stated that Key had a doctor's appointment scheduled for January 7. The examiner recommended dismissing the complaint on January 16 (apparently the examiner did not re-check Key's records, which would have showed that his January 7 appointment was postponed). Perrenoud accepted the recommendation to dismiss the grievance on January 21, stating that Key "was evaluat[ed] by nursing, intervention and education on ice, rest (no rec), elevation and use of ace wrap while ambulating was communicated to [Key] while he waits for his appointment with the provider." Dkt. 24-3, at 4. That concluded Perrenoud's involvement with the events discussed in Key's complaint.[1]

On January 9, 2015, Key submitted an HSR asking why he had not yet been seen by a physician when he had an appointment scheduled for January 7. A nurse responded that he was scheduled for an appointment with a physician on January 12. But Key did not see the doctor then either. Defendants suggest that the appointments needed to be rescheduled, but they do not explain the reason for these particular appointments being canceled. On January 19, Key submitted another HSR asking why he had not yet seen a doctor. A nurse responded the next day, stating that Key was scheduled for an appointment on January 21.

---

[1] Defendants also produce a July 2016 grievance by Key that Perrenoud rejected as moot given his transfer to another prison, and Key contends (without supporting evidence) that he filed three other grievances that were reviewed by Perrenoud in late 2015 or 2016. But those grievances all postdate the events mentioned in the complaint and the date given on Key's complaint, February 24, 2015. Even if this case did involve Perrenoud's actions in late 2015 or 2016, Key has not produced any evidence showing that she acted with deliberate indifference with regard to those events.

On January 21, 2015, Key was seen by defendant Dr. Karl Hoffmann. Key stated that his knee would lock up and occasionally "give way."[2] Hoffman examined Key and noted some fluid buildup in the knee. After performing stress tests to the knee, Hoffman noted that Key had some discomfort when exposed to "valgus" stress, or movement inward. Hoffman concluded that Key's right knee was actually stronger than his left. (Key had a history of pain in his left knee.) Hoffman concluded that he had no medical limitations requiring a special medical classification, but he suspected that Key had torn the lateral meniscus in his right knee, and perhaps had a tendon injury or bursitis. Hoffman made the following treatment plan:

> Trial of physical therapy for the right knee injury including modalities and possibly a brace. Also use an anti-inflammatory in the form of naproxen and ice. If the knee does not improve with conservative options we can consider an MRI and an orthopedic consult.

Dkt. 23-1, at 33. Key states that his prescription for 500 mg of Naproxen proved to be ineffective in treating his pain.

Key had an initial evaluation for physical therapy on February 2, 2015. The therapist thought that Key's knee was "no longer lining up as it should" but the therapist denied his request for a brace or other form of support. The therapist instructed Key on stretches to

---

[2] Defendants state that that the swelling in Key's knee had subsided, and that Key reported that he did not believe he had any specific limitations as far as being able to do any job at the prison. Key disputes these proposed findings without citing admissible evidence, and the state objects to the proposed dispute because of this failure. However, Key is allowed to present evidence on summary judgment that might not be in the proper form, but that could be brought in the proper form at trial. Fed. R. Civ. P. 56(c)(2); *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014), reh'g denied ("We note that the Federal Rules of Civil Procedure allow parties to oppose summary judgment with materials that would be inadmissible at trial so long as *facts* therein could later be presented in an admissible form." (emphasis in original)). Because Key could testify about these issues at trial, I will consider his proposed findings and treat these issues as disputed.

perform. After a few weeks, Key found that the stretches only aggravated his injury. But the therapist still refused to give him a brace.

On February 16, 2015, Key submitted an HSR stating that during recreation, his knee buckled and was still painful. He also stated that the therapist would not give him a sleeve, and the therapist wanted to continue with treatment that was not working. He requested a sleeve and an MRI. Key was seen in the HSU later that day; the parties agree that the meeting was about Key having difficulties sleeping, but dispute whether Key said it was because of knee pain. Key says that the nurse did not examine him other than take his blood pressure and tell him that he had a doctor appointment in March.

On February 26, physical therapist Phil Hoechst ordered a knee sleeve for Key. Hoffman co-signed this order. Hoffman was not involved in Key's treatment after co-signing the sleeve order.

In August 2015, Key went to UW Hospital for an MRI, which indicated:

> Impression: Partial-Thickness cartilage loss of the lateral femoral trochiea, Cartilage/Bone: Minimal nonspecific bone marrow edema within the inferior pole of the patelle. There is partial-thickness fissuring within the cartilage of the lateral trochiea, with some underlying subchondral cystic change. There is linear T2 hypointensity within the central trochlear cartilage, which can be seen with cartilage defeats. Articular cartilage is otherwise intact. Bone marrow is otherwise normal signal intensity without edema or fracture. Other Intra-Articular: Physiologic amount of fluid within the knee joint. No intra-articular body identified.

Dkt. 17-1, at 3. I take the main point of this report to be that Key had suffered cartilage damage.

Since his injury, Key has felt his knee "practically give out from the pain." He often wakes up from the pain from his knee "popping" while he is asleep. His knee feels weaker from being forced to walk around without any support aids. Since filing the lawsuit, he has

received a knee brace, and has been prescribed Tramadol for the pain, which Key believes shows that his prior treatment violated the Eighth Amendment.[3]

ANALYSIS

Key brings claims that defendants Hoffman, Mashak, and Perrenoud violated his Eighth Amendment right against cruel and unusual punishment by acting with deliberate indifference to his knee injury. The parties have filed dueling motions for summary judgment on these claims.

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04

---

[3] Key adds proposed findings about further treatment decisions by unnamed officials in April 2015 and beyond, but those events postdate the date on Key's complaint, and Key does not dispute that Hoffman's final involvement in Key's treatment was co-signing the order for a knee sleeve in late February.

(1976). A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584-85 (7th Cir. 2006). A medical need may be serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). The parties do not appear to be disputing that Key's knee injury gave rise to a serious medical need.

To be considered "deliberately indifferent," an official must know of and disregard "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

Key contends that prison officials were deliberately indifferent to his knee injury in several ways: it took about 50 days for him to see a doctor, the pain medication and physical therapy he was prescribed did not work, he should have received a knee brace, and he did not receive an MRI sooner. Key does not actually name as defendants all the medical personnel responsible for these asserted deprivations.[4] Even if he had, many of the deprivations cannot support an Eighth Amendment claim because they boil down to Key's disagreement about

---

[4] Key seems to think that defendant Hoffman is liable for every perceived misdeed because he was his doctor during the time in question. But there is no evidence that Hoffman actually oversaw medical determinations made by other providers.

specific treatments. Key does not have the right to dictate the specific treatments he should be provided, *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). And I cannot look at individual treatment decisions in a vacuum: instead I must examine the *totality* of the care Key received to determine whether any of the defendants were deliberately indifferent to his needs, *Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000).

Turning to the decisions discussed in the proposed findings, I conclude that it was not deliberate indifference for Key to be assessed physically by Hoffman, rather than with an MRI. The Seventh Circuit has stated that "[a]n MRI is simply a diagnostic tool, and the decision to forego diagnostic tests is 'a classic example of a matter for medical judgment.'" *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014).

Nor could Key win a claim about the failure to provide him with a knee brace. Even if an unnamed nurse disagreed with Jarocki about giving Key a brace, medical professionals are allowed to disagree about the course of treatment. Jarocki ended up giving Key an ace wrap, and the therapist later recommended a sleeve, which Hoffman approved. Whether or not these aids were truly a more appropriate course of treatment is a question resolved under a negligence theory, not a deliberate indifference theory under the Eighth Amendment.[5]

Key says that his physical therapy did not help him, and instead caused him more pain. Again, Key did not sue the therapist, but even if Hoffman could be held responsible for the progress of the therapy, the failure of a particular treatment method does not in itself

---

[5] Key says that Hoffman "ordered" a brace, and that the therapist countermanded this decision. But the medical notes show that Hoffman stated that the trial of physical therapy would "possibly" include a brace. No reasonable jury would think that this meant the therapist had to immediately order a brace. Indeed, Hoffman later signed off on the therapist's recommendation of the sleeve instead.

violate the Eighth Amendment. Key argues that his rights were violated because prison officials persisted in a course of treatment known to be ineffective, which can support an Eighth Amendment claim *see, e.g.*, *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016), as amended (Aug. 25, 2016), but the facts do not fit that theory here. Key complained about a few weeks' worth of what he believed to be ineffective therapy, but physical therapy rarely fixes a problem overnight. Without stark allegations that the therapist demanded Key perform movements that he knew were harming him, Key cannot show that the decision to continue therapy was deliberately indifferent.

That leaves the relatively long delay—about 50 days—Key faced in meeting with Hoffman. Key does not show that the wait itself exacerbated his knee injury. But he does say that he suffered in severe pain for most of this time, yet his appointment kept being pushed back. Key made clear through his various grievances and HSRs that his ibuprofen was not effective in treating his pain. Prolonged severe pain is a serious medical need. *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039-40 (7th Cir. 2012).

But even assuming that the delay in providing pain treatment would be enough to violate the Constitution, it is less clear *who* would have acted with deliberate indifference toward this problem by scheduling Key with such a delay. Key says that defendant Hoffman is responsible because he was "the physician in charge of the overall treatment Key received." Dkt. 26, at 1. But plaintiffs in actions brought under 42 U.S.C. § 1983 cannot bring claims under a *respondeat superior* theory holding a supervisor liable for the acts of subordinates. Hoffman can only be liable for decisions in which he was personally involved. Unfortunately, defendants' proposed findings do not provide much clarity about these decisions. Hoffman states the following:

> Due to the limited number of appointments available with physicians, appointments are scheduled based on the need and severity of the injury. Key's knee pain was appropriately addressed by Jarocki and did not present an immediate need. To the best of my knowledge, the January 7, 2015 and January 12, 2015 appointments had to be rescheduled.

Dkt. 23, at 4. What does he mean by this? Perhaps the nurses responding to Key's HSRs weighed his injury against other patients' needs and scheduled the January 7 appointment with Hoffman without his knowledge and then kept pushing the date back. Perhaps Hoffman had some input in scheduling decisions, particularly once he canceled the original appointment. Or perhaps none of the individuals involved in these severity assessments and scheduling decisions were deliberately indifferent because they faced a crush of patients and limited resources. In that event, the prison staffing polices themselves may be the actual culprit. *See Collins Bey v. Haines*, No. 13-cv-618-jdp, 2016 WL 5718251, at *9 (W.D. Wis. Sept. 30, 2016) (claims for injunctive relief against state could proceed because defendant dentists' testimony showed delays were caused by inadequate staffing).

I am not willing to grant summary judgment to defendants solely on the basis that pro se litigant Key did not ascertain though the discovery process exactly who made these decisions. Key has renewed his previously dismissed motion for recruitment of counsel, but I am not convinced that counsel is necessary to resolve this issue either. I will give the state a short time to supplement its proposed findings with an explanation of how his appointments were scheduled, and who determined that his pain management needs did not require more prompt attention. Defendants are also free to explain in greater detail why they believe the Key's pain was not severe enough to warrant more prompt treatment. Key will be given a chance to respond. I will deny the motion for recruitment of counsel for the time being, but should the supplemental briefing reveal that the remaining issues are too complex for Key to

11

handle, I will consider recruiting counsel. Because this supplemental briefing schedule will run close to the August 28 trial date, I will strike the trial date and associated pretrial deadlines, and I will reset them if any of Key's claims survives the supplemental briefing.[6]

That leaves Key's claims against defendants Mashak and Perrenoud. Key's claim against Mashak has two aspects: (1) she was responsible for his medical care because she was the Health Services Unit manager, and (2) she was involved in one of his grievances. But as stated above, plaintiffs in § 1983 actions cannot bring claims under a *respondeat superior* theory holding a supervisor liable for the acts of subordinates. The only claim I can consider here is a claim that Mashak was personally involved in his first grievance about his knee problem: she was contacted by the institution complaint examiner for guidance concerning Key's medical issues.

Key's claims against Perrenoud are that she failed to intervene in his care when he filed grievances about his ongoing problems. Instead she accepted the complaint examiner's recommendation to deny his grievances. Because I have already concluded that prison officials' treatment decisions—excluding the 50-day delay in pain treatment—did not violate the Eighth Amendment, any claims regarding Mashak or Perrenoud's involvement in those treatment decisions must also be dismissed.

This still leaves the delay in pain treatment. Defendants contend that neither Mashak nor Perrenoud can be liable under the Eighth Amendment for this problem because they were not personally involved in Key's treatment, and they cannot countermand treatment decisions made by other medical staff or prescribe drugs themselves. But they were still

---

[6] Defendants raise a qualified immunity defense, but it is clearly established that prison officials cannot act with deliberate indifference toward treatment of inmates' pain, so qualified immunity is not available here.

charged with assessing the treatment Key received in considering his two December 2014 grievances. It is true that they did not directly treat Key, but prison officials may still be liable if they knew about unconstitutional conduct yet "facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (internal quotation omitted). And it is reasonable to assume that an examiner could have ordered more prompt appointment. Otherwise, it is unclear what the point of the grievance process for medical problems could be.

Defendants go on to argue that claims against complaint examiners fail as a matter of law because "'[r]uling against a prisoner on an administrative complaint does not cause or contribute to' any alleged constitutional violation." Dkt. 20, at 7 (quoting *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)). But this court has previously considered this type of argument and rejected it. *See, e.g., Turner v. Hoechst*, No. 15-cv-23-jdp, 2016 WL 492323, at *2 (W.D. Wis. Feb. 5, 2016). In *George*, the court made clear that a grievance examiner cannot violate the constitution by denying a complaint about a *completed* act of harm. This makes sense because the examiner could take no action to undo the harm done to the prisoner. But the Seventh Circuit has also suggested at a grievance examiner could violate the Eighth Amendment:

> One can imagine a complaint examiner doing her appointed tasks with deliberate indifference to the risks imposed on prisoners. If, for example, a complaint examiner routinely sent each grievance to the shredder without reading it, that might be a ground of liability. Or a complaint examiner who intervened to prevent the medical unit from delivering needed care might be thought liable.

*Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (citations omitted). Nonetheless, the court also noted, "The Governor, and for that matter the Superintendent of Prisons and the

13

Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care. That is equally true for an inmate complaint examiner." *Id*. Despite being a medical professional herself, Perrenoud had the right to rely on medical staff's decisions and the assessments examiners sought from Mashak and Koopmans. No reasonable jury would think that Perrenoud was deliberately indifferent by upholding the denial of his grievances.

On the other hand, Mashak was one of the medical professionals to whom the grievance examiners deferred. She was tasked with assessing Key's treatment. Presumably she could have said that it was taking too long for him to receive more care for his pain. But she did not. Although Mashak's involvement was at the early end of the 50-day delay, I cannot conclude at this point that summary judgment should be granted to Mashak on this claim. The parties are free to develop this aspect of Key's claim in their supplemental materials.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 19, is GRANTED, and plaintiff's motion for summary judgment, Dkt. 14, is DENIED with respect to plaintiff's claims about the types of treatment he received for his knee injury.

2. A summary judgment ruling on plaintiff's claim regarding a 50-day delay in pain treatment is deferred pending the submission of supplemental materials. Defendants may have until July 24, 2017, to submit supplemental proposed findings of fact and briefing regarding this claim. Plaintiff may have until August 14, 2017, to file responsive materials.

3. Defendant Keisha Perrenoud is DISMISSED from the case.

4. The August 28, 2017 trial date and associated pretrial deadlines are STRUCK.

5. Plaintiff's motion for recruitment of counsel, Dkt. 29, is DENIED without prejudice.

Entered July 5, 2017.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge