IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PRINCE D. KEY,

                                Plaintiff,

   v.

MEREDITH MASHAK and KARL HOFFMANN,

                              Defendants.

OPINION and ORDER

15-cv-673-jdp

---

In this action removed from the circuit court for Dane County, plaintiff Prince D. Key brings claims that defendant prison officials violated his Eighth Amendment right against cruel and unusual punishment by failing to treat his injured knee while he was incarcerated at Columbia Correctional Institution. Both sides filed motions for summary judgment. I granted defendants' summary judgment motion and denied Key's motion on his claims regarding the specific types of treatment he received for his knee injury. *See* Dkt. 38. I concluded that defendants' treatment decisions were matters of medical judgment that could not support Eighth Amendment claims. *See id.* But I required the parties to provide supplemental briefing on Key's claim that there was an approximately 50-day delay in him being seen by a doctor to assess his need for more effective pain medication.

The parties have provided supplemental briefing and proposed findings of fact. After reviewing those materials, I conclude that Key fails to show that defendants acted with deliberate indifference toward Key's pain treatment, so I will grant defendants' motion for summary judgment, deny Key's motion, and dismiss the case.

UNDISPUTED FACTS

I recounted the parties' versions of events in my previous order, Dkt. 38, at 2–7, so I will present only a brief overview here. On November 29, 2014, Key injured his right knee during a basketball game. Key heard a loud popping sound in his knee and then felt pain, grinding, and swelling. A nurse examined him, diagnosed him with an "alteration in comfort" and impaired physical mobility, gave him an ace bandage, and instructed him to use ice, rest, elevate his knee, abstain from recreation, and take ibuprofen as needed for pain.

In the weeks that followed, Key complained that his knee was locking up, causing him pain, and that the ibuprofen was not working. He wanted to see a doctor. About two weeks after the injury, he filed a grievance, and the institution complaint examiner contacted defendant Meredith Mashak, a registered nurse who at the time was the CCI health services manager, to assist with addressing the medical issues raised by the grievance. Mashak reviewed Key's records and sent a memo to the examiner, stating that the nurse followed the prison's "Musculoskeletal Pain Nursing Protocol" and provided him with proper treatment remedies. She also stated that the nurse told Key that he should file a health service request if he was not seeing improvement. The examiner recommended dismissing the grievance, but also stated that if Key continued to have problems with his knee, he should ask to be seen by Health Services Unit staff. Key later filed another grievance but it was not reviewed by Mashak.

Key had a doctor's appointment scheduled for January 7, 2015, but it was postponed to January 12 and then January 21, when he was finally seen by defendant Dr. Karl Hoffmann. Hoffmann prescribed physical therapy, ice, Naproxen 500 mg, and stated that if these "conservative" options did not work, he would consider an MRI and an orthopedic consult. In

late February 2015, Hoffmann co-signed an order for a knee sleeve. That concluded his involvement in Key's care.

ANALYSIS

Key's only remaining claims are Eighth Amendment medical care claims against defendants Hoffmann and Mashak[1] for his 53-day wait to be seen by a doctor, even though he complained that the ibuprofen he was instructed to take "as needed" was not effective to treat his pain. In my previous order, I stated that the parties were unclear about who was responsible for scheduling and re-scheduling the doctor appointments. Dkt. 38, at 10.

Defendants raise two main arguments in their supplemental briefing: they contend that (1) Key presents no evidence showing that defendants Hoffmann or Mashak were personally involved in delaying his pain treatment; and (2) Key fails to show how the delay caused him any harm. Key has filed a motion he titles as one to "enter new evidence into the record," Dkt. 51, in which he recounts what a doctor told him his knee looked like when the doctor performed arthroscopic surgery on him in 2017. Key followed up by filing what appears to be the surgeon's report from that surgery, noting a "significant lesion" and "dangling" cartilage. Dkt. 56. Defendants oppose the first filing on the ground that Key's testimony about what a doctor told him is hearsay.

I will grant Key's motion and accept the new evidence because he presents the actual medical report from the surgery. But ultimately, Key does not need this evidence at summary

---

[1] Keisha Perrenoud, a registered nurse who was employed as the DOC's Bureau of Health Services nursing coordinator, as also a defendant in this case, but I dismissed all claims against her in my previous order. *See* Dkt. 38.

3

judgment, because defendants' argument that Key cannot show that he was harmed by the delay in treatment is fundamentally flawed. Key says that he suffered severe pain because his appointment with a doctor kept being delayed. Prolonged severe pain itself is a serious medical need, *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039–40 (7th Cir. 2012), so a deliberate or reckless failure to treat that need can violate the Eighth Amendment, regardless of the underlying physical condition of his knee.

The problem for Key is defendants' first argument: he fails to present evidence showing that defendants Hoffmann or Mashak were deliberately indifferent to the problem. I asked for supplemental briefing on the pain-treatment issue because defendants did not fully explain who was responsible for the scheduling decisions that caused the delay. In particular, I stated:

> Perhaps the nurses responding to Key's HSRs weighed his injury against other patients' needs and scheduled the January 7 appointment with Hoffmann without his knowledge and then kept pushing the date back. Perhaps Hoffmann had some input in scheduling decisions, particularly once he canceled the original appointment. Or perhaps none of the individuals involved in these severity assessments and scheduling decisions were deliberately indifferent because they faced a crush of patients and limited resources. In that event, the prison staffing polices themselves may be the actual culprit. . . .
>
> . . . I will give the state a short time to supplement its proposed findings with an explanation of how his appointments were scheduled, and who determined that his pain management needs did not require more prompt attention.

Dkt. 38, at 11.

In the initial summary judgment briefing, defendant Hoffmann provided a vague statement that appointments are scheduled based on the severity of the injury, but he did not explain whether he had input on these triage decisions. In defendants' supplemental materials Hoffmann now says that he doesn't remember why Key's appointment with him was pushed

back to January 21. But he says that the health service requests or information requests like the ones Key filed would have been screened by nurses and it was their job to triage the inmates waiting to be seen by a doctor. Sometimes they would confer with Hoffmann about rescheduling appointments to make room for inmates with more pressing needs, but there is no record of that with regard to Key's appointments. He does not remember reviewing Key's chart before the January 21, 2015 appointment.

Key states that Hoffmann's failure to recall whether he played a role in moving the appointment date "does not mean [Hoffmann] didn't personally cause the delay." Dkt. 46, at 1. But it is undisputed that Hoffmann was not involved in providing the initial treatment for the injury or in setting the original January 7, 2015 appointment. Nor does Key provide any evidence showing that Hoffmann was involved in rescheduling the appointment, and there is no record of Hoffmann being involved. Ultimately, all Key can do is speculate that Hoffmann was aware of his pain and yet failed to arrange for an earlier appointment. That is not enough for a reasonable jury to conclude that Hoffmann acted with deliberate indifference towards his medical need. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). (If party responding to summary judgment motion fails to establish existence of essential element that party must prove at trial, summary judgment should be granted to moving party.); *Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012) (speculation not enough to defeat motion for summary judgment).

As for defendant Mashak, she was directly involved in these events one time: she examined Key's medical records as part of his December 13, 2014 grievance. This interaction was toward the early end of the total delay, about two weeks after Key's injury. In my previous order, I stated that it could not tell from the record whether Mashak was deliberately

indifferent by failing to tell the complaint examiner that it was taking too long for Key to receive more care for his pain. But defendants point out that in Mashak's memorandum to the complaint examiner, she agreed with the current course of treatment in part because nurses told Key that he should make more health service requests if his treatment was not working. At the time Mashak reviewed the grievance, Key was scheduled for a doctor's appointment "very soon." Dkt. 23-1, at 65 (nurse's response to December 14, 2014 health service request asking to see a doctor for knee locking and pain). The fact that the appointment was later rescheduled cannot be blamed on Mashak. And given the record here, no reasonable jury could conclude that Mashak was deliberately indifferent by failing to intervene to move up an already scheduled appointment.

Alternatively, Key contends that Hoffmann's and Mashak's actions delegating triage and scheduling decisions to nurses created a policy that resulted in the deprivation of his rights. It is incorrect to describe the workings of CCI's Heath Services Unit and grievance process as Hoffmann's or Mashak's policies, because the policies are presumably created by high-level administrators. I take Key to be saying that defendants "turned a blind eye" to the harm being caused inmates by these policies. *See Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (supervisors could be personally involved in a constitutional deprivation if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see"). But aside from what he believes is his own inadequate treatment, Key does not provide evidence showing that the HSU or grievance policies were inadequate to prevent nurses from harming inmates with their scheduling decisions, That is, there is no reason to believe that at the time of the events in question here, Hoffmann or Mashak suspected that an inmate who suffered an injury would find his pain needs unaddressed because of how nurses

triaged the need for doctor appointments or how the grievance process worked. So this theory is not enough to defeat defendants' motion for summary judgment either. Because no reasonable jury could conclude that either defendant acted with deliberate indifference toward Key's pain treatment, I will grant defendants' motion for summary judgment, deny Key's motion for summary judgment, and dismiss the case.

ORDER

IT IS ORDERED that:

1. Plaintiff Prince D. Key's motion to present new evidence, Dkt. 51, is GRANTED.

2. Defendants' motion for summary judgment, Dkt. 19, is GRANTED, and plaintiff's motion for summary judgment, Dkt. 14, is DENIED with respect to plaintiff's claim about the delay in treatment for his pain.

3. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered January 30, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge